SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------------------------X

RAMON HERNANDEZ,

                          Plaintiff,

            -against-

CITY OF NEW YORK, CHRISTOPHER MCGRISKEN
AMADEO OKTROVA, STEVEN LOPEZ, ROBERT
BARNETT, ANGEL GONZALEZ, JOSEPH DELIO,
DANIEL COLLINS, KEVIN TO, MARK LOPEZ,
CHRISTOPHER LOPEZ, and JOHN or JANE DOE 1-10,

                         Defendants.

------------------------------------------------------------------------X

**SUMMONS**

Index No.

Plaintiff designates
Bronx County as the place of trial

The basis of the venue is where the
injury occurred

**TO THE ABOVE-NAMED DEFENDANTS:**

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Bayside, New York
       February 15, 2021

                        **SIM & DEPAOLA, LLP**

                        */s/ Samuel C. DePaola*
                        By: Samuel C. DePaola, Esq.
                        *Attorneys for Plaintiff*
                        42-40 Bell Boulevard – Suite 201
                        Bayside, New York 11361
                        T: (718) 281-0400
                        F: (718) 631-2700

TO:

**CITY OF NEW YORK** via Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

P.O. CHRISTOPHER McGRISKEN, ID #950865 of Bronx Auto Crime Unit
1 Police Plaza Path
New York, NY 10038

SGT. AMADEO OKTROVA, SHIELD #1914, TAX ID #949413
1 Police Plaza Path
Room 110C
New York, NY 10038

DET. STEVEN LOPEZ, TAX ID #938880 of STRATEGIC RESPONSE GROUP
1278 Sedgwick Avenue
Bronx, NY 10452

SGT. ROBERT M. BARNETT, TAX ID #918730, of STRATEGIC RESPONSE GROUP
1278 Sedgwick Avenue
Bronx, NY 10452

SGT. ANGEL GONZALEZ, SHIELD #4646, TAX ID #914415, of the 46th Precinct
2120 Ryer Avenue
Bronx, NY 10457

DET. JOSEPH DELIO, TAX ID #915580 (Retired)
1 Police Plaza Path
New York, NY 10038

SGT. DANIEL COLLINS, TAX ID #921222, of the 46th Detective Squad
2120 Ryer Avenue
Bronx, NY 10457

LT. KEVIN TO, TAX ID #920902, of STRATEGIC RESPONSE GROUP
1278 Sedgwick Avenue
Bronx, NY 10452

P.O. MARK LOPEZ, SHIELD #24420, of the 46th Precinct
2120 Ryer Avenue
Bronx, NY 10457

SGT. CHRISTOPHER LOPEZ, TAX ID #942906, of PBBX
450 Cross Bronx Expwy
Bronx, NY 10457

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------------X
RAMON HERNANDEZ ,

                              Plaintiff,                                **VERIFIED COMPLAINT**

                 -against-                                              Index No.

CITY OF NEW YORK, CHRISTOPHER MCGRISKEN
AMADEO OKTROVA, STEVEN LOPEZ, ROBERT
BARNETT, ANGEL GONZALEZ, JOSEPH DELIO,
DANIEL COLLINS, KEVIN TO, MARK LOPEZ,
CHRISTOPHER LOPEZ, and JOHN or JANE DOE 1-10,

                              Defendants.
-----------------------------------------------------------------------X

        Plaintiff, **RAMON HRNANDEZ**, by and through the undersigned attorneys, **SIM &**

**DEPAOLA, LLP**, for his complaint against the Defendants, **CITY OF NEW YORK**,

**CHRISTOPHER MCGRISKEN**, **AMADEO OKTROVA**, **STEVEN LOPEZ**, **ROBERT**

**BARNETT**, **ANGEL GONZALEZ**, **JOSEPH DELIO**, **DANIEL COLLINS**, **KEVIN TO**,

**MARK LOPEZ**, **CHRISTOPHER LOPEZ** and **JOHN** or **JANE DOE 1-10**, alleges and states

as follows:

1.      This is a civil rights action, in which Plaintiff seeks relief, vis-à-vis 42 U.S.C. §§ 1981,

1983, 1985, 1986 and 1988, the laws of the City and State of New York, in addition to the self-

executing clauses or implied private causes of action within the constitution of the State of New

York, for the violations of his civil rights and the deprivations to his liberties, as enumerated and

promulgated by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United

States, the constitution of the State of New York, as well as the laws of the City and State of New

York.

2.      The following claims arise from a February 5, 2015 incident, in which defendants, acting

under color of state law, unlawfully stopped, questioned, searched, arrested and detained Plaintiff

in the vicinity of the intersection of Burnside Avenue and Andrews Avenue, The Bronx, New York. As a result, Plaintiff was deprived of his liberty and suffered various physical, emotional and psychological injuries.

3.     Plaintiff was wrongfully detained for over twenty-one (21) months and was maliciously prosecuted and denied his right to due process, until December 12, 2016, when the criminal proceedings were terminated in favor of plaintiff, via the unconditional dismissal and sealing of all adverse charges against plaintiff, pursuant to Section 160.50 of the New York Criminal. Procedure Law (CPL § 160.50).

4.     At all times here mentioned, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

5.     Within ninety (90) days of the accrual dates of the claims herein, plaintiff served the New York City Comptroller's Office with written notice of said claims.

6.     Over thirty (30) days have elapsed since the service of said notice, and this matter has not been settled or otherwise disposed of.

7.     The claims herein have been commenced within one-year-and-ninety-days of the dates from which they arose.

8.     Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, an award of costs and reasonable attorneys' fees, and such other and further relief as this Court may deem just and proper.

### PARTIES

9.     Plaintiff, RAMON HERNANDEZ ("Mr. Hernandez"), is a Hispanic or Latino male, who presently resides in Bronx County, within the City and State of New York.

10.     Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

11.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, screening, hiring, training, supervision, discipline, retention and conduct of all NYPD personnel, including police officers, detectives, investigators, sergeants, lieutenants and other supervisory officers or officials, as well as the individually named NYPD Defendants herein.

12.     In addition, at all times here relevant, Defendant, City, was responsible for enforcing the rules or regulations of the NYPD, and for ensuring that the NYPD personnel obey the laws and constitutions of the United States and the State of New York.

13.     Defendants, CHRISTOPHER MCGRISKEN ("MCGRISKEN"), AMADEO OKTROVA ("OKTROVA"), STEVEN LOPEZ ("S. LOPEZ"), ROBERT BARNETT ("BARNETT"), ANGEL GONZALEZ ("GONZALEZ"), JOSEPH DELIO ("DELIO"), DANIEL COLLINS ("COLLINS"), KEVIN TO ("TO"), MARK LOPEZ ("M. LOPEZ"), CHRISTOPHER LOPEZ ("C. LOPEZ"), were at all times relevant herein, police officers, detectives, sergeants, lieutenants, supervisors, policymakers or officials employed by the NYPD, or City of New York, and as such, were acting as agents, servants and employees of the City of New York, or the NYPD. Defendants are being sued in their individual and official capacities.

14.     At all relevant times, Defendants JOHN or JANE DOE 1-10 were police officers, detectives, supervisors, policymakers or officials employed by the NYPD, or City of New York. At this time, Plaintiff does not know the true names or tax registry numbers of Defendants, JOHN or JANE DOE 1-10, as such knowledge is within the exclusive possession of Defendants.

Case 1:21-cv-02397-LGS   Document 1-1   Filed 03/18/21   Page 6 of 36

15.     At all relevant times herein, Defendants JOHN or JANE DOE 1-10 were acting as agents, servants and employees of the City of New York, or the NYPD. Defendants JOHN or JANE DOE 1-10 are being sued in their individual and official capacities.

16.     At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City or State of New York.

### FACTUAL CHARGES

17.     On February 5, 2015, at approximately 3:15 a.m., Mr. Hernandez was lawfully walking in the vicinity of Burnside Avenue and Andrews Avenue, within the County of Bronx, City and State of New York.

18.     At all times, Mr. Hernandez was in obeyance of all local, state and federal laws.

19.     On said date and time, defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, and C. LOPEZ, ordered Mr. Hernandez to stop moving and aggressively approached him with their arms outstretched menacingly, despite possessing reasonable suspicious, probable cause or reason to believe that Mr. Hernandez had committed any crime or violation of the law, or that he was involved in any criminal activity, whatsoever.

20.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, then placed Mr. Hernandez under arrest, without providing any explanation as to the reason therefor, by violently grabbing and contorting plaintiff's arms behind his back and apply metal handcuffs to his wrists in an excessively tight fashion, causing Mr. Hernandez to sustain substantial physical pain and injuries.

21.     At no point prior to stopping or arresting Mr. Hernandez, were defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, ever informed that Mr. Hernandez had committed any crimes or violations of the law, including the alleged robbery of Jose Ordonez.

22.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, then removed Mr. Hernandez against his will to the NYPD's 46th Precinct, where plaintiff was fingerprinted, photographed and strip-searched, while also subjected to various other indignities particular to unjust confinement, by or at the direction of defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ.

23.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, never observed Mr. Hernandez committing any crime or violation of the law, or any act that could reasonably be suspected as such, including the alleged robbery of Jose Ordonez.

24.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, did not possess any reasonable suspicion or probable cause to justify their stop, seizure, search, questioning, detention, arrest or subsequent prosecution of Mr. Hernandez, as they were without any credible or admissible evidence that would lead a reasonable officer to believe that plaintiff had committed any crime or violation of the law, at any point in time.

25.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, fabricated and suppressed materially relevant

evidence, grossly deviated from proper police conduct and engaged in conduct undertaken in bad faith, to justify the unlawful arrest and malicious prosecution of Mr. Hernandez.

26.     Specifically, defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, stopped and arrested Mr. Hernandez prior to obtaining a physical description or identification of Jose Ordonez' alleged assailants, arranged and conducted the tainted and inadmissible corporeal identification procedure of Mr. Hernandez by the alleged victim, Jose Ordonez, fabricated evidence to be used against Mr. Hernandez, including the recovery of stolen property from Mr. Hernandez, in addition to the actual facts and circumstances surrounding the apprehension, arrest and identification of Mr. Hernandez, and suppressed exculpatory evidence, including the failure of Jose Ordonez to positively identify Mr. Hernandez as one of his assailants.

27.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, forwarded said fabrications to prosecutors, while, suppressing and withholding exculpatory evidence, so that plaintiff would be arrested, detained and criminally prosecuted, despite the absence of any probable cause to support such gratuitous impingements to plaintiff's civil rights and liberties.

28.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, therefore caused a criminal prosecution to be initiated against plaintiff, despite the clear lack of any probable cause to believe Mr. Hernandez was guilty or that one would succeed.

29.     As a result, defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, maliciously prosecuted and denied plaintiff his rights to fair trial and due process, until the criminal proceedings were

terminated in his favor, via the unconditional and outright dismissal of all adverse charges on December 12, 2016, due to the clear lack of probable cause to believe plaintiff had committed any crime or offense, whatsoever.

30.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, caused Mr. Hernandez to be unlawfully imprisoned and wrongfully detained for more than twenty-one (21) months, from the date of his arrest on February 5, 2015, until his eventual release from physical custody on, or about, November 15, 2016.

31.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, arrested, intentionally caused a criminal prosecution to be initiated against Plaintiff, because of their desires to use Plaintiff's arrest and criminal prosecution as leverage to obtain information related to actual crimes and criminal suspects, to incur additional overtime compensation, benefits and career favor from the superior officers, to avoid the adverse consequences associated with failing to meet NYPD departmental arrest quotas and also to conceal their egregious violations of proper police procedures and gross misconduct, including their fabrications of non-existent observations, evidence and information.

32.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, unjustly and unlawfully targeted plaintiff for arrest and prosecution, due to impermissible considerations, regarding plaintiff's color, race or ethnicity, or defendants' perceptions thereof, as defendants would not have violated plaintiff's civil rights, if he was not a Hispanic or Latino male and member of protected class, as an ethnic minority.

33.     Defendants, MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, engaged in a conspiracy to falsely arrest and maliciously prosecute Plaintiff by personally conferring with each other regarding the fabrication of the aforementioned non-existent evidence, the suppression of exculpatory evidence, as well as the manner and means by which said fabrications could be used to deprive Mr. Hernandez of his liberties and civil rights.

34.     Mr. Hernandez asserts that Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, illegally approached, stopped, searched, and then falsely arrested him, due solely to their racially discriminatory prejudices against Hispanic or Latino males, their intent to use the instant arrest as leverage against Mr. Hernandez, so that he would provide defendants with information regarding other crimes or criminal suspects, their desires to fulfill an unconstitutional arrest quota, to benefit from increased overtime compensation and retaliate against plaintiff for his prior alleged criminal acts and arrests.

35.     Mr. Hernandez further asserts that Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, acted in such an unlawfully reprehensible manner, due to their unsubstantiated and unreasonable presumption that Mr. Hernandez would be aware of serious ongoing criminal activity or actively committing a crime himself, solely because of his status as Hispanic or Latino male.

36.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, arrested and maliciously prosecuted Plaintiff, because of their racially discriminatory beliefs, which compelled defendants to equate to Mr. Hernandez's ethnic or national origin to criminal guilt or criminal knowledge.

37.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, perpetrated multiple overt acts in furtherance of their obviously discriminatory inclinations, namely the stop, searches, assaults, batteries, seizure, arrest, and malicious prosecution against plaintiff, even after they were unable to discover any evidence to justify such conduct.

38.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, unlawfully stopped, questioned, searched, seized, arrested, and maliciously prosecuted plaintiff, due solely to defendants' perception or consideration of Mr. Hernandez's ethnicity or national origin.

39.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, possessed no valid reason to approach, stop, question, search or arrest plaintiff, which gives rise to the strong inference that such conduct resulted from defendants' unjust motivations or proclivities.

40.     Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, subjected Mr. Hernandez to disparate treatment compared to other individuals similarly situated, because defendants did not stop, seize, search, detain, arrest or accuse any white individuals, who had engaged in activity identical to the kind that resulted in plaintiff's illegal search and seizure, namely walking on a public sidewalk while committing no crimes or violations of the law.

41.     Plaintiff asserts that the Defendants, including MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, who violated Plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the

commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact with their police officers.

42.     The individually named defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

43.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via incontrovertible evidence, such as video evidence.

44.     The constitutionally repugnant behavior that persists within the ranks of the NYPD results from the NYPD's own policies, rules and procedures, namely the NYPD's incredibly flawed and illegal use of arrest quotas. Despite its illegality, such policies remain systemic throughout the NYPD and its individual commands. The NYPD, however, was not content in compelling its

officers to effect as many arrests as possible, regardless of the presence of any legal right to do, it promulgated various subsets of quotas, which are predicated on race, color or ethnicity. Additionally, the NYPD, its supervisors or policymakers would assign varying point values to arrests, which were, again, impermissibly based upon the arrestee's race, color or ethnicity. Unsurprisingly, officers would be better rewarded for minority arrests or summonses. This egregious conduct has reported by numerous respected media outlets and publications and has even formed the basis for federal lawsuits against the City and the NYPD, which were commenced by its own employee officers.

45.     On June 17, 2020, the *New York Daily News* published an article, by Graham Rayman, entitled "Brooklyn Cop Claims he was Punished for not Meeting Arrest Quotas, Refusing to Take Responsibility for Controversial Arrest in which he Wasn't Involved," describing allegations from an NYPD Police Officer, Terrence Dickerson, that he was retaliated against by the NYPD for refusing to adhere to mandatory racially based arrest quotas and for his refusal to accept responsibility for a controversial and publicized arrest via the excessive force, despite the fact that he was not even at the scene.

46.     Another article with a title that speaks for itself, also published by the *New York Daily News*, on December 5, 2019, and written by Graham Rayman, is entitled "Ex-Cop Details NYPD 'Collar Quotas'—Arrest Black and Hispanic Men, 'No Cuffs on Soft Targets' of Jews, Asians, Whites: Court Docs."

47.     *The New York Times*, on December 6, 2019, published an article by Joseph Goldstein and Ashley Southall, entitled "I Got Tired of Hunting Black and Hispanic People," which revealed a disturbing account from a different NYPD Police Officer, Anthony Diaz, describing a police force that measures the quality of police work by the quantity of minority arrests.

48.    On March 18, 2018, *The New York Times* published an explosive article, entitled
"Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr.
Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting
the fact that the substantiation of a claim against an officer will invariably rely on the presence of
incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an
alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further
handicapped by a terribly designed system that requires evidence of a virtually indisputable nature
to substantiate any claim against an officer. The article also details the NYPD's persistent
reluctance to investigate or discipline officers who lie and even posits that this reluctance is a
significant cause of the lying pandemic within the NYPD. The article references various officers
and detectives who were the subject of credible accusations relating to the officers' intentionally
false statements, with some allegations coming from federal and state judges.

49.    On September 12, 2019, *The New York Times* published another article by Joseph
Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars."
Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of
marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana.
It should not require an article in *The New York Times* to call attention to such patently
disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's
failure to correct such behavior, the willingness of prosecutors and judges to credit the lying
officers and the increasing rate of occurrence.

50.    On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies
Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD
Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least

three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

51.     Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

52.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

53.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in Plaintiff's arrest without probable cause.

54.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

55.     Defendants' actions, pursuant to Plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of Plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with Defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

56.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of Defendants, the NYPD and City of New York.

57.     Upon information and belief, the personnel files, records and disciplinary histories of the officer Defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer Defendants were unfit for employment as NYPD officers, or

for employment in general, and that the probability of the individually named Defendants committing similar violations in the future was extremely high.

58.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of Defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including Defendants, MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ.

59.     Upon information and belief, the individually named Defendants have combined to be named as Defendants in numerous lawsuits that have accused them of committing violations similar or identical to those alleged herein, all of which have resulted no disciplinary or corrective action of any kind.

60.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct the individually named Defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

61.     The aforementioned acts of Defendants, including CITY, MCGRISKEN, OKTROVA, S. LOPEZ, BARNETT, GONZALEZ, DELIO, COLLINS, TO, M. LOPEZ, an C. LOPEZ, directly or proximately resulted in the deprivation or violation of Plaintiff's civil rights, as guaranteed and

protected by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, the constitution of the State of New York, as well as the laws of the City and State of New York.

62.    As a direct or proximate result of said acts, Plaintiff was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.

## FIRST CAUSE OF ACTION
Unlawful Search & Seizure Under
New York State Law

63.    The above paragraphs are here incorporated by reference as though fully set forth.

64.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

65.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

66.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

67.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

68.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to Article I, Section 12, of the constitution of the State of New York and Article II, Section 8, of the New York Civil Rights Law.

69.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

70.  As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Unlawful Search & Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

71.  The above paragraphs are here incorporated by reference as though fully set forth.

72.  Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

73.  Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

74.  Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

75.  The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

76.  Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the Constitution of the United States.

77.  As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
False Arrest & False Imprisonment Under
New York State Law

78.  The above paragraphs are here incorporated by reference as though fully set forth.

79.  Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

80.  Plaintiff was conscious of his confinement.

81.  Plaintiff did not consent to his confinement.

82.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

83.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

84.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
False Arrest & False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

85.     The above paragraphs are here incorporated by reference as though fully set forth.

86.     The Defendants violated the Fourth and Fourteenth Amendments to the Constitution of the United States by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

87.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

88.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

89.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
Assault & Battery Under
New York State Law

90.     The above paragraphs are here incorporated by reference as though fully set forth.

91.     Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful or offensive touching.

92.     Defendants engaged in and subjected plaintiff to immediate harmful or offensive touching and battered him without his consent.

93.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

94.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

95.     The above paragraphs are here incorporated by reference as though fully set forth.

96.     The Defendants violated Plaintiff's rights, under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

97.     Defendants engaged in and subjected Plaintiff to immediate harmful or offensive touching and battered him without his consent.

98.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

99.     The above paragraphs are here incorporated by reference as though fully set forth.

100.    Defendants initiated the prosecution against Plaintiff.

101.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

102.    Defendants acted with malice, which may be inferred in the absence of probable cause.

103.    The prosecution was terminated in Plaintiff's favor, when all adverse were unconditionally and outright dismissed, due to the lack of probable cause to believe that plaintiff had committed a crime or that the prosecution would succeed.

104.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

105.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

106.    The above paragraphs are here incorporated by reference as though fully set forth.

107.    Defendants initiated the prosecution against Plaintiff.

108.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

109.    Defendants acted with malice, which may be inferred in the absence of probable cause.

110.    The prosecution was terminated in Plaintiff's favor, when all adverse charges were unconditionally dismissed, due to the lack of probable cause to believe that plaintiff had committed a crime or that the prosecution would succeed.

111.    Accordingly, Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights.

112.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

113.    The above paragraphs are here incorporated by reference as though fully set forth.

114.     Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

115.     Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

116.     Defendants intended to inflict substantial harm upon plaintiff.

117.     Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

118.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

119.      As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

120.     The above paragraphs are here incorporated by reference as though fully set forth.

121.     Defendants arrested, detained and caused a criminal prosecution to be initiated against plaintiff to compel the compliance or forbearance of some act.

122.     Defendants had no excuse or justification to forcibly detain and initiate a prosecution against plaintiff, especially with the absence of any cognizable probable cause.

123.     Defendants intended to inflict substantial harm upon plaintiff.

124.     Defendants acted to achieve a collateral purpose, beyond or in addition to plaintiff's criminal prosecution.

125.     Defendants' actions therefore resulted in deprivations to plaintiff's rights, pursuant to the Fourth and Fourteenth Amendments.

Case 1:21-cv-02397-LGS   Document 1-1   Filed 03/18/21   Page 24 of 36

126.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
Denial of Right to Due Process Under
New York State Law

127.    The above paragraphs are here incorporated by reference as though fully set forth herein.

128.    Defendants fabricated false evidence to be used against plaintiff that was likely to influence a jury's decision.

129.    Defendants forwarded said false information to prosecutors.

130.    Defendants' actions resulted in post-arraignment deprivation to plaintiff's liberty and freedom of movement.

131.    Accordingly, defendants violated plaintiff's right to a fair trial, pursuant to Article I, Sections 1, 2 and 6, of the constitution of the State of New York, in addition to Article II, Section 12, of the New York Civil Rights Law.

132.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

133.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TWELFTH CAUSE OF ACTION
Denial of Rights to Fair Trial & Due Process Under
42 U.S.C. § 1983 Against Individual Defendants

134.    The above paragraphs are here incorporated by reference as though fully set forth.

135.    Defendants fabricated false evidence to be used against plaintiff that was likely to influence a jury's decision.

136.    Defendants forwarded said false information to prosecutors.

137.    Defendants' actions resulted in post-arraignment deprivations to plaintiff's liberty and freedom of movement.

138.    Accordingly, defendants violated Plaintiff's rights, pursuant to the Fourth, Fifth and Fourteenth Amendments to Constitution of the United States.

139.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Biased Based Profiling under
New York City Law

140.    The above paragraphs are here incorporated by reference as though fully set forth herein.

141.    Defendants impermissibly relied upon Plaintiff's actual or perceived race, color, national origin, ancestry, citizenship status, gender, religion, religious practice, age, disability or sexual orientation, as the determinative factor in initiating law enforcement action against Plaintiff, rather than Plaintiff's behavior or other information or circumstances that would link Plaintiff to suspected unlawful activity.

142.    Accordingly, defendants violated plaintiff's rights, pursuant to Section 14-151 of the Administrative Code of the City of New York.

143.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

144.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws under
New York State law

145.    The above paragraphs are here incorporated by reference as though fully set forth herein.

146.    Plaintiff is a member of a racial or ethnic minority and protected class.

147.    Defendants discriminated against Plaintiff on the basis of his race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation

148.    Defendants also engaged in the selective treatment of Plaintiff, in comparison to others similarly situated.

149.    Defendants' discriminatory treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

150.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

151.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

152.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

153.    Accordingly, defendants violated plaintiff's rights, pursuant to Article I, Section 11, of the constitution of the State of New York, Article VII, Section 79-N, of the New York Civil Rights Law and Section 296, Paragraph 13, of the New York Executive Law.

154.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

155.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FIFTEENTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 & 1983 Against Individual Defendants

156.    The above paragraphs are here incorporated by reference as though fully set forth herein.

157.    Plaintiff is a member of a racial or ethnic minority and protected class.

158.    Defendants discriminated against Plaintiff on the basis of his race, color or ethnicity

159.    Defendants engaged in the selective treatment of Plaintiff in comparison to others similarly situated.

160.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiff for the exertion of his Constitutional rights, or malicious or bad faith intent to injure Plaintiff.

161.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

162.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

163.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

164.    Accordingly, defendants violated plaintiff's rights, under the Fourteenth Amendment.

165.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SIXTEENTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights & Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 & 1986 Against Individual Defendants

166.    The above paragraphs are here incorporated by reference as though fully set forth herein.

167.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of his rights to engage in protected speech or activities, to be free from unreasonable searches and seizures, to be afforded a fair trial, to not be deprived of his liberty or property without due process of law, or of the privileges and immunities under the laws and constitutions of the United States and of the State of New York.

168.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

169.    As a result, Plaintiff sustained injuries to his person, was deprived of his liberty or was deprived of rights or privileges of citizens of the United States.

170.    Defendants' conspiracy was motivated by a desire to deprive Plaintiff of his civil rights or because of some racial, otherwise class-based, invidious or discriminatory animus.

171.    The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or in process of being committed, possessed the power to prevent or aid in the prevention of the conspiratorial objective, and neglected to do so.

172.    Accordingly, defendants violated Plaintiff's rights, pursuant to the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

173.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SEVENTEENTH CAUSE OF ACTION
Violation of Victims of Violent Crime Protection Act under
New York City Law

174.    The above paragraphs are here incorporated by reference as though fully set forth herein.

175.    Defendants' acts or series of acts constituted a misdemeanor or felony against plaintiff, as defined in state or federal law which presented a serious risk of physical injury to plaintiff, whether or not such acts have actually resulted in criminal charges, prosecution or conviction.

176.    Accordingly, defendants committed a crime of violence against plaintiff and violated plaintiff's rights, pursuant to Section 10-403 of the Administrative Code of the City of New York.

177.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

178.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### EIGHTEENTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

179.    The above paragraphs are here incorporated by reference as though fully set forth herein.

180.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

181.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

182.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### NINETEENTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

183.    The above paragraphs are here incorporated by reference as though fully set forth herein.

184.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

185.    Accordingly, the Defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments.

186.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTIETH CAUSE OF ACTION
Negligent Hiring, Training, Retention & Supervision Under
New York State Law

187.  The above paragraphs are here incorporated by reference as though fully set forth.

188.  Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

189.  Defendant City breached those duties of care.

190.  Defendant City placed defendants in a position where they could inflict foreseeable harm.

191.  Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

192.  Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

193.  As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTY-FIRST CAUSE OF ACTION
Municipal *Monell* Liability Under
42 U.S.C. § 1983 Against Defendant City

194.  The above paragraphs are here incorporated by reference as though fully set forth.

195.  Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

196.  Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

197.    Defendant City and its policymakers failed to provide adequate training or supervision to their subordinates to such an extent that is tantamount to a deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

198.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

199.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

200.    Defendant City's conduct caused the violation of plaintiff's civil rights, pursuant to Constitution of the United States.

201.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

        **WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)   On the First Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

b)   On the Second Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

c)  On the Third Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

d)  On the Fourth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

e)  On the Fifth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

f)  On the Sixth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

g)  On the Seventh Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

h)  On the Eighth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

i)  On the Ninth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

j) On the Tenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

k) On the Eleventh Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

l) On the Twelfth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

m) On the Thirteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

n) On the Fourteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

o) On the Fifteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

p) On the Sixteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

q) On the Seventeenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

r) On the Eighteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

s) On the Nineteenth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

t) On the Twentieth Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

u) On the Twenty-First Cause of Action, in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter;

v) Awarding Plaintiff punitive damages in an amount to be determined by a jury on all causes of action set forth herein;

w) Awarding Plaintiff reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and all applicable state or local laws, including the New York Civil Rights and Executive laws and Administrative Code of the City of New York;

x) Together with the costs and disbursements of this action.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Bayside, New York
      February 15, 2021

                            **SIM & DEPAOLA, LLP**

                            */s/ Samuel C. DePaola*
                            By: Samuel C. DePaola, Esq.
                            *Attorneys for Plaintiff*
                            4240 Bell Blvd - Ste 201
                            Bayside, NY 11361
                            T: (718) 281-0400
                            F: (718) 631-270

## ATTORNEY VERIFICATION

      I, Samuel C. DePaola, an attorney admitted to practice in the courts of New York State, state that I am a partner with the firm of **SIM & DEPAOLA, LLP**, the attorneys of record for Plaintiff in the within action; I have read the foregoing and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true. The reason this verification is made by me and not by Plaintiff, is because Plaintiff resides outside the county where deponent maintains his office. I affirm that the foregoing statements are true, under the penalties of perjury.

Dated: Bayside, New York
      February 15, 2021

                            */s/ Samuel C. DePaola*
                            SAMUEL C. DEPAOLA, ESQ.

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
_____

RAMON HERNANDEZ,

                    Plaintiff,


         -against-


CITY OF NEW YORK, CHRISTOPHER MCGRISKEN AMADEO OKTROVA, STEVEN
LOPEZ, ROBERT BARNETT, ANGEL GONZALEZ, JOSEPH DELIO, DANIEL COLLINS,
KEVIN TO, MARK LOPEZ, CHRISTOPHER LOPEZ and JOHN or JANE DOE 1-10,

                    Defendants.
_____

### SUMMONS & VERIFIED COMPLAINT
_____

# SIM & DePAOLA, LLP
By: Samuel C. DePaola, Esq.
*Attorneys for Plaintiff*
42-40 Bell Boulevard
Suite 201
Bayside, New York 11361
Tel. (718) 281-0400
_____

TO: CORPORATION COUNSEL OF THE CITY OF NEW YORK

*Attorney(s) for Defendants*
_____

Service of a copy of the within is hereby admitted.
Dated:


Attorney(s) for